## McCarty v. McCarty's Administrator et al.

(Decided March 19, 1935.)

F. Z. MONARCH and W. E. AUD for appellant.

CLEMENTS, CLEMENTS & RINGO, LaVEGA CLEMENTS and BEN D. RINGO for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

J. M. McCarty died April 30, 1931, leaving surviving him his widow, Melissa McCarty, and five children by a former marriage. His first wife died November 2, 1903. At that time he owned 449 acres of land in Daviess county, and after the death of his wife he and his five children continued to reside on the land.

On December 17, 1904, he executed a note to the Union Central Life Insurance Company for $7,500, due ten years after date, and at the same time he executed and delivered to the insurance company a mortgage upon his lands to secure the payment of the note. The debt to the insurance company was paid, and the mortgage was released on December 28, 1914. All of his children continued to live with him on the farm until the debt was paid except his daughter Mamie McCarty, who became a member of the order of St. Clare in 1912. She is known in the record as Sister Patricia. On November 13, 1915, he executed and delivered to his son Paul McCarty a deed conveying to him 113 acres of land. On the same day he executed and delivered to his sons Joseph McCarty and Patrick McCarty deeds conveying to them 100 acres and 125 acres of land, respectively, and on March 27, 1916, he conveyed to his daughter Theresa Powers 106 acres of land. The consideration set out in each of the deeds was as follows:

"That for and in consideration of One Thousand Dollars to be paid on or before eight years from this date, evidenced by the promissory note of the party of the second part payable to the order of Mamie McCarty, now known as Sister Mary Patricia, whose postoffice address is Monastery of St. Clare, Kentucky Avenue and St. Clare Court,

Evansville, Indiana, and payable on or before eight years from date hereof, said note bearing even date herewith and drawing interest at the rate of 4 per cent per annum from January 1, 1916, payable annually, until paid; and the further consideration of Three Hundred Dollars to be paid annually by the party of the second part to the party of the first part for and during the natural life of the party of the first part, said payments to be made at the end of each year on and after January 1, 1916.''

Each deed contained the following:

''A lien is hereby expressly retained on the land herein conveyed to secure the payment of the $1,000.00 note hereinabove set out, and the interest thereon; and also to secure the prompt and faithful fulfillment of the agreement made by the party of the second part to pay the annual installment of $300.00 to the party of the first part, so long as he (the party of the first part) shall live.''

Each deed conveyed a life estate to the grantee, with the remainder interest to his or her children. The deeds also provided that J. M. McCarty would pay the interest on the $1,000 note each child was to execute to Mamie McCarty so long as he lived, and after his death the grantee was to pay the interest on such note.

After he had thus divided the land among his children, he moved to a 28-acre tract of land located in another section of the county and resided there until his death. In 1922 he married the appellant, then Melissa Payne. After his death, his son-in-law, J. H. Powers, husband of Theressa McCarty Powers, qualified as his administrator, and on November 6, 1931, he and the children of J. M. McCarty and their respective husbands and wives brought this action to settle the decedent's estate.

The widow, Melissa McCarty, filed an answer and cross-petition in which she set out the facts concerning the execution of the deeds by J. M. McCarty to his children in 1915 and 1916, and alleged that the annual payments of $300 provided for in the deeds had not been made and that the four children to whom the land had been deeded were indebted to the estate for these payments. Paul McCarty, Joseph McCarty, Patrick

McCarty, and Theressa Powers filed separate answers to the cross-petition, in which they denied that they had failed to make the payments provided for in their respective deeds, and they further alleged that it was understood and agreed between them and their father that the annual payments of $300 set out in the deeds were intended to create only obligations on the part of the grantees to assist in providing for the wants and comforts of their father during his lifetime, and it was the purpose of the grantor which was known and assented to by the grantees, that upon the death of J. M. McCarty all obligations growing out of the conveyances should cease and no other payments should be made, and they asked that, if the language used in the deeds could not be so construed as to carry out such purpose and intention on the part of the grantor and the grantees, then that such deeds be reformed. The widow's reply to each of the separate anwers was a traverse.

The circuit court adjudged that:

"The deeds from John M. McCarty to Paul Mc-Carty, Patrick McCarty, Joseph McCarty and Theresa Powers be reformed so as to conform to the purpose and intention of the grantor, John M. Mc-Carty, in these deeds, and each of said deeds is so reformed as to provide that the consideration for each of said deeds recited therein as $300.00 per year, was in truth and in fact agreed upon between the parties and so understood by John M. McCarty to be such a part of the recited consideration of $300.00 per year as John M. McCarty might demand of each of the grantees in said deeds during the lifetime of John M. McCarty, and at his death no other or further past due or other payments thereon should ever be demanded or collected by his personal representative or by any person interested in his estate, or that any portion of either of these payments remaining unpaid at the time of his death, if any such there were, should ever become a portion of his personal estate."

Melissa McCarty has appealed.

A number of witnesses were introduced, including neighbors of the decedent and persons with whom he had business dealings, who testified to statements made by him in their presence that he had conveyed his land

to his four children and they were to pay him $300 annually as he needed it for his support, but that these payments should be limited to such as he needed and demanded and all liability should cease at his death. The record shows that, when he executed the mortgage on his land in 1904, shortly after the death of his first wife, he promised his children to divide the land among them if they would remain at home and aid him in paying off the indebtedness of $7,500. The children remained with him and worked on the farm. A few months after the debt was paid he divided the land among four of his children and executed a deed to each. About three years before this transaction the fifth child had joined a religious order, and he provided for her by requiring each of the children to whom the land had been conveyed to execute to her a note for $1,000, the payment of which was secured by a lien on the land. He deemed the $4,000 given to her equivalent in value to one-fifth of the land. His statements in regard to his understanding of the agreement between him and his children were made at the time the deeds were executed and from time to time thereafter until his death.

All of the children were permitted to testify, and it is insisted that this was error, and that their testimony should not have been considered, in view of the provisions of section 606 of the Civil Code of Practice, since they were jointly interested in the result of the litigation and there was such a unity of interest that neither could testify for the other without testifying for himself. They moved that each be given a separate trial. The circuit judge overruled the motion, but stated that all of the evidence would be heard together and the cases would be considered separately by the court in arriving at a judgment. Conceding that they should not have been permitted to testify, their testimony was merely cumulative. After it is eliminated, there is an abundance of evidence to sustain the judgment.

Appellant did not plead limitations, but it is argued that her demurrer to the answers of appellees to her cross-petition should have been sustained on the ground that an action for the reformation of the deeds for fraud or mistake was barred by limitations and the time element appeared in the answers. Ordinarily, limitation, to be available, must be pleaded, Vance v. Atherton, 252 Ky. 591, 67 S. W. (2d) 968, but, where

an action is brought for relief from fraud or mistake after five years, plaintiff must allege facts excusing delay in order to state a cause of action. Cox v. Simmerman, 243 Ky. 474, 48 S. W. (2d) 1078; Forman v. Gault, 236 Ky. 213, 32 S. W. (2d) 977. But here the answer alleged, and the evidence tended to show, that J. M. McCarty construed the deeds as contended by appellees and stated shortly before his death that the grantees in the deeds were not indebted to him for the annual payments specified therein and that he expected them to pay only so much thereof as he needed during his lifetime for his support. His dealings with his children from the time the deeds were executed until his death support appellees' contention that their father recognized this to be the agreement between him and his children continuously during that period. According to the evidence, he was constantly reaffirming by his statements and actions such construction of the agreement. In the circumstances, he could not have relied upon the statute of limitations during his lifetime if a dispute had arisen between him and appellees, and consequently the statute is not available to one claiming through him.

The grantees named in the deeds paid the notes executed by them to their sister and scrupulously observed the terms of the agreement as it was understood by them and their father. He received considerable sums of money, and they delivered to him from time to time at his request corn, hay, and other farm products. After all the evidence which is claimed to be incompetent is eliminated, the judgment of the chancellor is amply supported, and it is affirmed.